


IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 1:20-cr-235 |
| SETH MICHAEL MYERS, | Count 1: Conspiracy to Receive Health Care Kickbacks (18 U.S.C. § 371) |
| Defendant. | |

## CRIMINAL INFORMATION

THE UNITED STATES ATTORNEY CHARGES THAT:

### General Allegations

At all times material to this Criminal Information:

1. The defendant, SETH MICHAEL MYERS, was a licensed attorney who has worked in various industries including factoring, a type of debtor finance where a business sells its accounts receivable to a third party at a discount.

2. [redacted] was a physician practicing in the Eastern District of Virginia and Maryland.

3. Michael Beatty initially owned and was then employed by a pharmacy in Maryland.

4. Mohamed Abdalla owned MEDEX Health Pharmacy ("MEDEX") and operated and controlled other pharmacies, including Royal Care Pharmacy ("Royal Care"), Millenium Pharmacy, and Pharmacy at Great Falls, all of which were located in the Eastern District of Virginia

5. From in and around December 2002 and continuing to in and around December 2013, Beatty was an owner of Fallston Pharmacy, located in Fallston, Maryland. Throughout Beatty's ownership of Fallston Pharmacy, the pharmacy produced compound drugs on a small scale, which it advertised on its website.

6. [redacted] was a physician specializing in orthopedic surgery, spine surgery, physical therapy, and comprehensive pain management services, and he owned a practice called [redacted] [redacted] had offices in the Eastern District of Virginia and Maryland.

7. TRICARE is a health insurance program of the United States Department of Defense. TRICARE provides civilian health insurance benefits for military personnel, military retirees, and military dependents all around the world. TRICARE provides medical coverage for Uniformed Service members including those who are active duty and some reservists along with their families. There are two types of beneficiaries under the TRICARE program: (a) Sponsors — active duty, retired and guard/reserve members; and (b) Family Members — spouses and children who are registered in the Defense Enrollment Eligibility Reporting System.

8. TRICARE is a Federal health care benefit program as defined by Title 18, United States Code, Section 24(b), and as such it is illegal for an individual to pay kickbacks to a person for the referral of an individual for the furnishing of some health care item, benefit, or service.

9. 32 CFR Part 199 regulates the TRICARE program. 32 CFR § 199.9(c)(12) prohibits "[a]rrangements by providers with employees, independent contractors, suppliers, or others which appear to be designed primarily to overcharge the [Civilian Health and Medical Program of the Uniformed Services] through various means (such as commissions, fee-splitting, and kickbacks) used to divert or conceal improper or unnecessary costs or profits." TRICARE

considers a claim resulting from a violation of 32 CFR § 199.9 as false and TRICARE would not pay for these items or services.

10. "Compounding" a prescription is a practice in which a licensed pharmacist or licensed physician combine mixed or altered ingredients of a drug or multiple drugs to create a drug tailored to the needs of an individual patient where standard medications, approved by the United States Food and Drug Administration ("FDA") are unsuitable due to patient allergies, intolerance to method of administration, or other uncommon factors. Compounded medications are prescribed and mixed for specific patients with particular needs; they are not to be mixed and marketed in bulk quantities. Compounded drugs are not FDA-approved. That is, the FDA does not verify the safety, potency, effectiveness or manufacturing quality of compounded drugs.

11. In general, compounded drugs are far more expensive than drugs approved by the FDA for the treatment of the same physical condition and are commonly reimbursed by Federal health care programs and private insurance companies at a far higher rate than FDA-approved drugs.

COUNT ONE

(*Conspiracy to Receive Health Care Kickbacks*)

12. The General Allegations are re-alleged and incorporated by reference.

13. From in and around spring 2013 and continuing through at least mid-2016, in the Eastern District of Virginia and elsewhere, MYERS knowingly and willfully did combine, conspire, confederate and agree with [redacted] MICHAEL BEATTY, MOHAMED ABDALLA, and others known and unknown to commit the following offense against the United States: violating Title 42, United States Code, Section 1320a-7b(b)(1)(A), by knowingly and willfully soliciting or receiving remuneration in return for referring patients to specific pharmacies for the furnishing, and/or arranging for the furnishing, of items and services for which payment was made, in whole or in part, under a Federal health care program, namely TRICARE.

Purpose of the Conspiracy

14. It was the purpose of the conspiracy for SETH MICHAEL MYERS ("MYERS"), [redacted] Michael Beatty ("Beatty"), Mohamed Abdalla ("Abdalla"), and their co-conspirators to unlawfully enrich themselves.

Ways, Manner, and Means

The ways, manners, and means by which MYERS and members of the conspiracy sought to achieve the purpose of the conspiracy included, but were not limited to, the following:

15. It was part of the conspiracy that the co-conspirators had an agreement on how to divide the profits associated with their illegal kickback scheme.

16. It was further part of the conspiracy that Beatty developed potential compounded formulas and investigated whether insurance companies would pay for particular formulas.

17. It was further part of the conspiracy that the co-conspirators continually looked for ways to generate the most profits from compound prescriptions.

18. It was further part of the conspiracy that [redacted] wrote prescriptions for high-reimbursing compounds when alternative cheaper prescriptions were available for patients.

19. It was further part of the conspiracy that [redacted] and MYERS sent a significant amount of compound prescriptions, including prescriptions reimbursed by TRICARE, to Fallston Pharmacy and Abdalla, who operated multiple pharmacies.

20. It was further part of the conspiracy that Beatty and Abdalla filled the prescriptions sent by [redacted] and MYERS.

Overt Acts

In furtherance of the conspiracy, and to effect the objects thereof, MYERS and his co-conspirators committed overt acts in the Eastern District of Virginia and elsewhere, including, but not limited to, the following:

**Fallston Pharmacy**

21. On or about July 9, 2013, MYERS, [redacted] and Beatty met at a restaurant in Baltimore, Maryland to discuss a potential kickback scheme.

22. In and around the summer of 2013, MYERS provided Beatty with a document entitled Area Manager Agreement (Independent Contractor). In this agreement, Beatty agreed to remit to MYERS 50% of the gross proceeds of all prescriptions directed to Fallston Pharmacy by [redacted] any of [redacted] affiliates, and any other doctors designated by MYERS.

23. In late 2013, MYERS, [redacted] and Beatty met at a restaurant located in Baltimore, Maryland to discuss why the scheme was not generating more profits for MYERS and Beatty.

24. In and around late 2013, MYERS coordinated having pre-printed prescription pads made that listed lucrative compound formulas and provided them to [REDACTED] for [REDACTED] to use.

25. From December 2013 to February 2014, Beatty sent a total of $7,370.64 from M&M Beatty LLC, which Beatty owned, to Laboratory Rx ("LABRX"), pursuant to the above-described kickback arrangement.

26. In and around December 2013, Beatty sold Fallston Pharmacy to another pharmacy. Beatty continued to work at the new pharmacy and spoke with the new owners about the agreement with [REDACTED] and MYERS. The new owners permitted Beatty to continue his agreement with [REDACTED] and MYERS.

27. On or about December 11, 2013, Beatty sent [REDACTED] and MYERS an email indicating that he was following up on [REDACTED] phone call about reimbursement for testosterone compounds and had determined that "the troches pay better than the creams."

28. On or about January 7, 2014, [REDACTED] sent an email to Beatty proposing a solution for how prescriptions filled at Fallston Pharmacy could be delivered to patients in Virginia. In particular, [REDACTED] proposed that Beatty fill Virginia prescriptions and mail them to [REDACTED] medical office in Maryland. [REDACTED] office would then deliver the prescriptions to the patients in Virginia. [REDACTED] noted in this email that most of Virginia patients were TRICARE patients.

29. From in and around January 2014 to an unknown date, [REDACTED] caused prescriptions written and filled as part of this kickback scheme to be delivered to TRICARE patients in the Eastern District of Virginia.

30. On or about February 18, 2014, MYERS and Beatty exchanged emails about the reimbursements sent by TRICARE for the prescriptions generated as part of the kickback scheme.

31. In and around April 2014, MYERS sent Beatty an email requesting that the kickback be increased to 60% based on "our increase in scripts sent as well as revenue generated."

32. In and around April 2014, MYERS, ████ and Beatty met for dinner again at a restaurant in Baltimore, Maryland to discuss issues related to the kickback arrangement.

33. From in and around February 2014 to in and around June 2014, the new pharmacy where Beatty worked sent a total of $225,462.01 to MYERS through LABRX. Approximately $172,140.31 of this money was for kickbacks from prescriptions for TRICARE patients.

34. During the course of this conspiracy, TRICARE paid a total of approximately $344,280.62 to the pharmacy for the prescriptions included in the kickback scheme, and the pharmacy profited approximately $295,782.03 from payments made by TRICARE for compounded prescriptions that were part of the kickback scheme, after estimated expenses are deducted.

**Abdalla's Pharmacies**

35. In and around late 2013, ████ directed MYERS to approach Abdalla about entering a kickback arrangement similar to the arrangement that ████ and MYERS had with Beatty.

36. On or about May 20, 2014, Abdalla and MYERS, on behalf of LABRX, entered into a Marketing Agreement, which documented the relationship and a negotiated profit split. While this agreement stated it was a Marketing Agreement, in reality, no actual marketing was conducted and the parties understood the agreement concerned sending prescription referrals to Abdalla. The agreement documented that ████ would receive 80% of the profits and Abdalla would receive 20% of the profits.

37. In and around June 2014, MYERS provided Abdalla with the pre-printed prescription pads from Fallston Pharmacy.

38. In and around June 2014, [redacted] began sending prescriptions to Abdalla and Abdalla began filling prescriptions.

39. In and around June 2014, [redacted] and MYERS instructed Abdalla to provide compound dispensing reports, so they could track the number of prescriptions sent to Abdalla at MEDEX.

40. In and around late 2014 or early 2015, [redacted] instructed MYERS to use LABRX to pay for [redacted] wife's lease of a Mercedes vehicle.

41. In and around September 2015, LABRX wrote a check to [redacted] in the amount of $280,000, which purported to be a loan (but was never repaid) so that [redacted] could purchase a building in Baltimore, Maryland.

42. From in and around July 2014 to in and around December 2015, Abdalla, through MEDEX, sent at least $2,573,323.45 to LABRX.

43. During the course of this conspiracy, TRICARE paid approximately $2,335,332.62 to MEDEX for the prescriptions included in the kickback scheme and paid Royal Care, another pharmacy owed by Abdalla to which Abdalla sent prescriptions he received pursuant to the kickback scheme, approximately $2,152,978.12.

44. During the course of this conspiracy, MEDEX made a net profit of approximately $2,208,602.12 and Royal Care made a net profit of approximately $953,054.92 from payments made by TRICARE for compound prescriptions that were part of the kickback scheme.

45. During the course of the conspiracy, LABRX received approximately $2,529,325.63 as a kickback from payments made by TRICARE for the compound prescriptions that [redacted] referred to Abdalla.

(All in violation of Title 18, United States Code, Section 371)

**NOTICE OF FORFEITURE**

Defendant, SETH MICHAEL MYERS, is hereby notified, pursuant to Federal Rule of Criminal Procedure 32.2(a), that upon conviction of the single offense set forth in this Criminal Information, he shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(7), any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the violation.

Pursuant to 21 U.S.C. § 853(p), SETH MICHAEL MYERS shall forfeit substitute property, if, by any act or omission of SETH MICHAEL MYERS, the property referenced above cannot be located upon the exercise of due diligence; has been transferred, sold to, or deposited with a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty.

(All in accordance with Title 18, United States Code, Sections 982(a)(7) and Fed. R. Crim. P. 32.2.)

G. Zachary Terwilliger
United States Attorney

By: ______________________
Carina A. Cuellar
Monika Moore
Uzo Asonye
Assistant United States Attorneys