IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | No. 1:20-cr-235 |
| | ) | |
| SETH MICHAEL MYERS, | ) | Hon. Claude M. Hilton |
| | ) | |
| Defendant. | ) | Hearing Date: March 19, 2021 |

## United States' Sentencing Position

The United States of America, through undersigned counsel and in accord with 18 U.S.C. § 3553(a) and the U.S. Sentencing Commission Guidelines Manual ("Guidelines"), hereby provides its position with respect to sentencing for defendant Seth Myers. The United States notes that the Pre-Sentence Investigation Report ("PSR") has calculated the Guidelines range as 51-60 months with respect to incarceration.[1] The Government also notes that this Court has already sentenced one defendant involved in this conspiracy and has elected to sentence below the guidelines range[2]. Based on the advisory Guidelines range, the § 3553(a) factors, and the Court's prior sentence regarding a co-conspirator, a sentence of incarceration of 36 months is sufficient, but not greater than necessary, to account for each of the § 3553(a) factors in this case.

---

[1] Included in the PSR's advisory Guidelines calculations is a three-level decrease for acceptance of responsibility. In this respect, the United States agrees with the PSR that the defendant qualifies, pursuant to U.S.S.G. § 3E1.1(a), for a two-level reduction. In addition, the defendant timely notified the United States of his intention to plead guilty, thus permitting the United States to avoid preparing for trial and to allocate its resources more efficiently. Accordingly, the United States hereby moves, pursuant to § 3E1.1(b), to decrease the defendant's offense level by one additional level.

[2] On March 5, 2021, the Court assessed the Guidelines range for defendant Michael Beatty between 30 and 37 months, and sentenced Beatty to a term of incarceration of 12 months and 1 day. *See United States v. Beatty*, 1:20-cr-209, Docket No. 20.

1

In particular, a sentence of 36 months appropriately captures the seriousness of the defendant's repeated decisions to solicit and accept the payment of kickbacks for expensive compound medications that were billed to TRICARE, which is a federal health care benefit program. Moreover, a sentence of 36 months is necessary to provide general deterrence of fraud schemes, like this one, which are often hard to detect and can cause considerable losses to health care benefit programs, as well as beneficiaries. At the same time, this recommendation takes into account that Myers financially benefitted significantly less than his co-conspirator, Physician 1, and that the Government's evidence indicates that a large number of Myers' actions were at the direction of Physician 1. Moreover, this recommendation considers that while Myers was listed as the president and sole owner of Laboratory RX, LLC ("LABRX"), the Government's evidence shows that Physician 1 controlled LABRX and Myers was not allowed to use any of the money associated with the company. Accordingly, the United States requests that this Court impose a sentence of 36 months and a period of supervised release of three years, along with full restitution and forfeiture as described in greater detail below.

**I.  Factual Background**[3]

Myers is a licensed attorney who began a business relationship with Physician 1, who was a close friend, in or around 2008. At some point, Physician 1 and Myers created a company called LABRX. As stated above, while Myers was listed on paper as the president and sole owner of the business, no decisions regarding the company were made without Physician 1's approval, and Myers was not allowed to use any of the money associated with the company. From in or around spring of 2013 continuing through at least mid-2016, Myers conspired with Physician 1 and others

---

[3] The PSR and the Statement of Facts signed by the defendant (Doc. No. 12) adequately set forth the offense conduct in this case.

to solicit and receive kickbacks for the referral of prescriptions for expensive compound medications. From late spring or early summer of 2013 to in or around fall of 2014, Myers and Physician 1 engaged in a scheme with Michael Beatty ("Beatty"), a licensed pharmacist, to receive kickbacks for referring prescriptions for these compound prescriptions to Fallston Pharmacy ("Fallston"). Myers and Beatty worked to disguise the fraudulent business arrangement by entering into a sham contract for "marketing services" and agreed that the pharmacy would receive 50% of the proceeds from the compound prescriptions that PHYSICIAN 1, his affiliates, or other doctors recruited by the conspirators directed to the pharmacy.

As part of the conspiracy, Myers had pre-printed prescription pads made that listed lucrative compound formulas for Physician 1 to use. Myers frequently communicated with Beatty about which formulas "paid the best" and directly monitored the kickback payments being sent from the pharmacy through monthly compound dispensing reports that the pharmacy was required to send. The goal of the conspirators was for PHYSICIAN 1 to diagnose his patients with conditions for which the insurance companies would reimburse these high cost medications. The conspirators knew that alternative medications were available at a lower cost to treat these conditions. Myers and the co-conspirators specifically targeted TRICARE because TRICARE was paying high reimbursements for the ingredients in the compounded medications and because TRICARE only required beneficiaries to pay minimal co-payments for these compounds. As such, beneficiaries were less likely to complain about the co-payments or refuse to accept the medications. In total, LABRX received approximately $147,891.02 for prescriptions that were part of the kickback scheme.

In or around late 2013, Physician 1 directed Myers to approach Mohamed Abdalla ("Abdalla"), the owner and/or operator of Medex Health Pharmacy ("Medex"), Royal Care

Pharmacy ("Royal Care"), and other pharmacies throughout the Northern Virginia area. Ultimately Physician 1, Myers, and Abdalla entered into an agreement with Abdalla similar to the one LABRX had with Beatty and Fallston Pharmacy. However, pursuant to the agreement with Abdalla, LABRX would receive 80% of the profits. Once again, Myers, on behalf of LABRX, entered into a sham marketing agreement with the pharmacy to attempt to hide the true purpose of the payment arrangement. Similar to the arrangement with Beatty, Myers worked with Abdalla to determine the compound formulas that would result in the most reimbursement, and Myers instructed Abdalla to provide compound dispensing reports to track the number of prescriptions sent to Medex as a result of the conspiracy. During the course of the conspiracy with Abdalla, LABRX received approximately $2,529,325.63 as a kickback from payments made by TRICARE for the compound prescriptions involved in the conspiracy that were billed by Medex or Royal Care. While Myers worked for LABRX, Myers was paid a salary between $200,000-$250,000 per year. In or around the summer of 2016, Physician 1 contacted Myers and informed him that the business relationship was no longer working, and Myers stopped working with Physician 1 at this time.

After Myers was approached by the Government, he agreed to speak with law enforcement and admitted to his participation in the fraud scheme and admitted his culpability. On September 30, 2020, Myers pled guilty to one count of conspiracy to receive health care kickbacks, in violation of 18 U.S.C. § 371.

## II.     Guidelines Calculation

As the Court is well aware, although the Guidelines are advisory, sentencing courts "must consult those Guidelines and take them into account when sentencing." *United States v. Booker*, 543 U.S. 220, 264 (2005). Thus, at sentencing a court "must first calculate the Guidelines range."

*Nelson v. United States*, 555 U.S. 350, 351 (2009). Here, the Probation Officer has calculated a Guidelines Range with respect to incarceration as 51-60 months.[4] This includes a base offense level of 8, a 16-level enhancement based on the value of the improper benefit conferred being more than $1,500,000 but $3,500,000 or less, and a 3-level enhancement based on role in the offense. It also includes a 3-level reduction for the defendant's acceptance of responsibility and timely notification to the United States of his intention to plead guilty. As noted above, the Court has already sentenced one co-conspirator in this case and has departed from the Guidelines in that case. In recognition of that sentence and to promote consistency, the Government believes an appropriate sentence in this case is 36 months.[5]

### III. Section 3553(a) Factors

After calculating the Guidelines, a sentencing court must then consider that Guidelines range, as well as the sentencing factors set forth in § 3553(a), and determine a sentence that is appropriate and reasonable for the individual defendant. *Nelson*, 555 U.S. at 351; *see also United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005). With respect to § 3553(a)'s enumerated factors, of particular pertinence here are the "nature and circumstances of the offense," "the history and characteristics of the defendant," the need for the sentence "to reflect the seriousness of the offense," the need "to promote respect for the law," the need for the sentence "to afford adequate deterrence to criminal conduct" and the need to "provide restitution to any victims." § 3553(a)(1),

---

[4] While the guidelines range is technically 51-63 months, the statutory maximum for the offense is 5 years.

[5] Defendant objects to the Probation Office's application of the +3 enhancement based on role in the offense. Regardless of whether the Court applies this enhancement or declines to apply it in response to defendant's arguments, the Government believes a sentence of 36 months is appropriate in this case.

5

(a)(2)(A), (a)(2)(B), (a)(7). As explained below, based on those factors, a sentence of 36 months is warranted, appropriate, and reasonable.

> A. *A sentence of 36 months is appropriate based on the nature, circumstances, and seriousness of the offense.*

Here, Myers' conduct involved working with Physician 1 to solicit and receive the payment of kickbacks for prescriptions billed by Fallston, Medex, and Royal Care. This scheme was quite significant as it involved multiple doctors and several pharmacies, and Myers engaged in this scheme for a lengthy period of time - approximately three years. While Myers did not bring any special skills or knowledge to the conspiracy, he engaged in a number of actions to make the conspiracy a success including finalizing the deals with the pharmacies that paid kickbacks to LABRX and working with the pharmacies to determine the best formulas for the physicians to prescribe to maximize reimbursement. Myers also closely monitored the monthly compound dispensing reports to make sure that LABRX was receiving its share of the profits from the kickback arrangement. During the scheme LABRX was paid a sizeable amount of money – over $2.5 million -- for the referral of the compounded prescriptions to the pharmacies at issue – and Myers was integral to this success through his constant communication with, and monitoring of, the pharmacies involved in the scheme. It is important to note however, that while Myers received a substantial salary for his efforts – between $200,000 and $250,000 per year – the vast majority of the profits of the scheme went to Physician 1. It is also important to recognize that Physician 1 was the one that first approached Beatty and instructed Myers to try to negotiate the deal with Abdalla, and Physician 1 was the one who terminated the relationship with Myers when it was no longer successful. Accordingly, given the length, scope, and seriousness of Myers' criminal conduct, a sentence of 36 months is warranted in this case.

> B.   *A sentence of 36 months is appropriate in light of the defendant's personal history and characteristics.*

A sentence of 36 months is also appropriate in light of Myers' personal history and characteristics. It is true that prior to this incident, Myers has no known criminal convictions. In addition, while Myers is a licensed attorney, it does not appear that the majority of his work associated with the conspiracy scheme involved providing any type of legal advice. That said, Myers is a highly-educated, intelligent, capable individual who had the life experience to make lawful choices, but did not elect to do so in this instance. A sentence of 36 months is thus necessary to account properly for his personal history and characteristics.

> C.   *A sentence of 36 months is appropriate to promote respect for the law and afford adequate general deterrence of similar schemes.*

The need for general deterrence also warrants a sentence of 36 months. General deterrence is important in any white-collar case, but is particularly important here when the payment and receipt of kickbacks could potentially result in patient harm. While there is no evidence that patient harm resulted out of the actions of the defendants in this case, when doctors and pharmacists are motivated by their own profit as opposed to the interests of their patients/customers, significant patient harm could occur.

Similarly, generally deterrence is an important factor for crimes, like Myers', that are difficult to detect. Health insurance benefit programs, like TRICARE, rely on doctors and pharmacists to make truthful representations about services being provided and reasons they are being provided. These programs do not have the resources to investigate and verify that providers are complying with all applicable laws and rules. The jobs of programs, like TRICARE, become even harder when individuals like the co-conspirators here, enter into sham arrangements to try to hide their true activities. A term of imprisonment of 36 months is thus necessary to send a message

to other potential fraudulent actors that crimes like this one that could result in significant financial and patient harm will be met with an appropriate term of incarceration.

## IV.     Restitution

The United States also asks that this Court impose restitution to the victim in the amount of $583,480.40 and that the Court direct forfeiture of assets, as required by the Plea Agreement. At sentencing, the Government will ask the Court to enter the restitution order and the consent order of forfeiture that will be provided to the Court and defense counsel prior to the hearing.

## V.     Conclusion

For the reasons stated, the United States requests that this Court impose a term of incarceration of 36 months, as well as a period of supervised release of three years.

Respectfully submitted,

Raj Parekh
Acting United States Attorney


By: _____/s/_____
Monika Moore
Carina A. Cuellar
Counsel for the United States
Assistant United States Attorneys
U.S. Attorney's Office
2100 Jamieson Ave
Alexandria, VA
Phone: 703-299-3700
Fax: 703-299-3981
Email: monika.moore@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on March 12, 2021, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing ("NEF") to all counsel of record.

By: _____/s/_____
Monika Moore
Counsel for the United States
Assistant United States Attorney
U.S. Attorney's Office
2100 Jamieson Ave
Alexandria, VA
Phone: 703-299-3700
Fax: 703-299-3981
Email: monika.moore@usdoj.gov